**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JESUS MANUEL BELTRAN, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 3:24-1141 |
| v. | : | (JUDGE MANNION) |
| C. PITTSINGER, Food Service Supervisor, *et al.*, | : | |
| | : | |
| Defendants. | | |

## MEMORANDUM

Presently before the Court is *pro se* Plaintiff's civil rights complaint, two applications for leave to proceed *in forma pauperis*, two uncertified prisoner trust fund account statements, and a certified prisoner trust fund account statement. After reviewing the applications and certified prisoner trust fund account statement, and after screening the complaint pursuant to 28 U.S.C. §1915(e)(2)(B), the Court will grant one of the *in forma pauperis* applications, deny the other as moot, and dismiss the complaint without prejudice to Plaintiff filing an amended complaint.

## I.   BACKGROUND

*Pro se* Plaintiff Jesus Manuel Beltran ("Beltran"), an individual currently incarcerated at Pennsylvania State Correctional Institution Huntingdon ("SCI Huntingdon"), commenced this action by filing a complaint (Doc. 1), an

application for leave to proceed *in forma pauperis* ("First IFP Application") (Doc. 2), and an uncertified prisoner trust fund account statement (Doc. 3), all of which the Clerk of Court docketed on July 11, 2024. Because Beltran did not submit a certified account statement as required by 28 U.S.C. §1915(a)(2),[1] an Administrative Order was entered requiring the Superintendent or other appropriate official at SCI Huntingdon, to file a certified statement of Beltran's prison trust fund account. (Doc. 6.) On July 23, 2024, the Clerk of Court received Beltran's certified account statement from SCI Huntingdon. (Doc. 7.) Six days later, Beltran submitted another application for leave to proceed *in forma pauperis* ("Second IFP Application") and another uncertified prisoner trust fund account statement. (Docs. 8, 9.)

In the complaint, Beltran indicates that he is asserting claims under 42 U.S.C. §1983 for violations of his Eighth Amendment right to be free from cruel and unusual punishment against Defendants C. Pittsinger

---

[1] Section 1915(a)(2) provides in pertinent part as follows:

A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. §1915(a)(2).

- 2 -

("Pittsinger"), a food service manager at SCI Huntingdon, and J. Rivello, the Superintendent at SCI Huntington. (Doc. 1 at 1–3, 5.) Beltran alleges that the following occurred on April 5, 2024:

> UNSANITIZED WORKING CONDITIONS AT SCI-HUNTINGDON'S KITCHEN DEPARTMENT. ROACH AND RAT INFESTATION THAT GOES UNCLEANED AND UNCHECKED. THE TRAY MACHINE THAT IS SUPPOSE [sic] TO CLEAN OUR TRAYS IS INFESTED WITH ROACH [sic]. FOOD IS NOT PROPERLY CLEANED FROM THE EATING TRAYS WHICH CAUSE MOLD AND NEW FOOD IS THROWN ON TOP OF THE DRY MOLDED TRAYS. THERE IS EXPOSURE TO BLACK MOLD AND ASBESTOS DUE TO THE LACK OF VENTILATION. THE WATER IS POLLUTED UNDRINKABLE [sic]. FURTHERMORE[,] THERE IS [sic] FIRE SAFETY HAZARD DUE TO THE DOUBLE LOCK MECHANISM ON ALL DOORS. PRISONERS NEED NOT WAIT UNTIL ACTUAL CASUALITIES OCCUR TO OBTAIN RELIEF FROM AN UNREASONABLE THREAT OF INJURY OR DEATH BY FIRE.

(*Id.* at 4.) Beltran describes his injury as: "FORCED TO EAT AND LIVE IN SAID CONDITIONS." (*Id.* at 5.) For relief, he seeks a declaratory judgment as well as compensatory and punitive damages. (*Id.*)

## II.    THE IFP APPLICATIONS

Under 28 U.S.C. §1915(a)(1), the Court "may authorize the commencement . . . of any suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that

the person is unable to pay such fees or give security therefor." *See id.* This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, §1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence." *Deutsch*, 67 F.3d at 1084 n.5. The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'" *Mauro v. N.J. Supreme Ct.*, 238 F. App'x 791, 793 (3d Cir. 2007) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life. *See, e.g., Rewolinski v. Morgan*, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An

affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); *Jones v. State*, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

Here, after reviewing the First IFP Application and Beltran's certified prisoner account statement, it appears that he lacks the financial means to prepay the filing fee in this matter. Accordingly, the Court will grant the First IFP Application and allow Beltran to proceed *in forma pauperis*. The Court will also deny the Second IFP Application as moot.

## III. DISCUSSION

### A. <u>Standard of Review</u>

Because the Court has granted Beltran leave to proceed *in forma pauperis*, the Court must examine whether his complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. §1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . (B) the action or appeal—(i) is

- 5 -

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. A complaint is malicious if, after "engag[ing] in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit," the Court determines that "the actions is an attempt to vex, injure or harass the defendant." *Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, No. 11-cv-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

As for the Court's analysis under Section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Therefore, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the operative complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the pro se] complaint as true, draw all reasonable inferences in [the pro se plaintiff's] favor, and ask only whether that complaint, liberally construed, ... contains facts sufficient to state a plausible ... claim." (citation, internal quotation marks, and all original alterations omitted)); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))). Nevertheless, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Neither will "a formulaic recitation of the elements of a cause of

action." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Moreover, when construing a *pro se* plaintiff's operative complaint, the Court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

**B.   Analysis**

In the complaint, Beltran asserts claims for Eighth Amendment violations under Section 1983, the vehicle through which federal constitutional claims may be raised in federal court. Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. When attempting to establish a claim under Section 1983, a plaintiff must allege and prove that a "person" deprived them of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under §1983, a plaintiff must allege

the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). In addition, a plaintiff asserting a Section 1983 claim must allege the personal involvement of each defendant in the alleged constitutional violation; in other words, the plaintiff must state how each defendant was involved in the events and occurrence giving rise to the claims in the complaint. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable under Section 1983); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

As just indicated, Beltran asserts Section 1983 claims for Eighth Amendment violations. More specifically, he contends that his unsanitary and unsafe conditions of confinement rise to the level of cruel and unusual punishment.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (referencing difference "between pretrial detainees' protection from 'punishment' under the Fourteenth Amendment and convicted inmates' protection from punishment that is 'cruel and unusual' under the Eighth Amendment"). In the Eighth Amendment context, a plaintiff must include sufficient allegations satisfying both an objective and subjective component, akin to excessive force claims. *See Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (explaining that the Eighth Amendment conditions-of-confinement "test . . . turn[s] on an analysis of a subjective and an objective component. That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"). In general, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Regarding the first prong, necessities include food, clothing, shelter,

medical care, and reasonable safety. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) ("[W]hen the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety." (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). As for the second prong, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 837. Only conditions of confinement that "cause inmates to ensure such genuine privations and hardship over an extended period of time" violate the Eighth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (citation and internal quotation marks omitted).

Here, Beltran identifies three aspects of his incarceration which he believes violate the Eighth Amendment. First, he alleges that SCI Huntingdon's kitchen is unsanitary because it is infested with roaches and rats, and food trays are not properly cleaned before being used again by inmates. (Doc. 1 at 4.) Second, he avers that he is being exposed to black mold and asbestos due to the lack of proper ventilation at SCI Huntingdon.

(*Id.*) Third, and finally, he asserts that there is an existing fire hazard due to the double-lock mechanism on the doors. (*Id.*)

Before addressing Beltran's concerns about his conditions of confinement, the Court must address a fundamental problem with the complaint itself, namely, Beltran's failure to tie any of his factual allegations to Defendants. As stated above, Beltran must include factual allegations showing that Defendants were personally involved in the alleged constitutional violations to state plausible Section 1983 claims. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct" (quoting *Iqbal*, 556 U.S. at 677)). Beltran's failure to connect any of his allegations to Defendants warrants dismissal of the complaint for the failure to state a claim.

In addition, both Defendants appear to be supervisors at SCI Huntingdon insofar as Pittsinger is a food services manager and Rivello is the Superintendent. To the extent Beltran has attempted to assert Section 1983 claims against Defendants based merely on allegations that they supervised individuals at SCI Huntingdon, he cannot do so because liability

under Section 1983 cannot be predicated on respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her §1983 claims on a respondeat superior basis." (citing *Rode*, 845 F.2d at 1207) (emphasis omitted)); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his §1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if Beltran seeks to hold Defendant supervisors liable for unconstitutional acts by their subordinates, his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)

(citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff such as Beltran must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional

violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

In this case, insofar as Beltran does not include a single factual allegation linking either Defendant, or anyone else, to the alleged unconstitutional conditions at SCI Huntingdon, he has failed to allege a plausible Section 1983 claim against them based on Defendants' roles as supervisors under either theory of supervisory liability. This failure to so plead also warrants dismissal of the complaint.

Turning now to Beltran's concerns with his conditions of confinement, none of his allegations rise to the level of an Eighth Amendment violation. Regarding his allegations about roaches and rats in the kitchen, as well as the use of uncleaned food trays, the Court notes that prison conditions may be harsh and uncomfortable without rising to the level of a constitutional violation. *Farmer*, 511 U.S. at 833–34. Here, Beltran has failed to state a plausible Eighth Amendment claim because there are no allegations that these kitchen conditions pose a substantial risk of harm to his health or safety, or that Defendants knew of these conditions and disregarded an excessive risk to Beltran's health and safety. *See Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (rejecting Eighth Amendment claim where prisoner failed to allege serious harm from two-week period where he had only thin blanket to protect him from frigid area entering unheated cell through window with broken latches, roaches crawled over him while he tried to sleep on badly torn mattress, urine and waste "encrusted" sink and toilet, trash, dirt, and debris covered floors, walls, and sink, and stench of waste came from broken toilet); *Robles v. Casey*, No. 10-cv-2663, 2011 WL 398208, at *8–9 (M.D. Pa. Jan. 7, 2011) (recommending dismissal of *pro se* plaintiff's Eighth Amendment conditions-of-confinement claim based on, *inter alia*, unsafe and unsanitary conditions in prison's kitchen because plaintiff's

allegations failed to state that the "unsanitary conditions in the kitchen posed a substantial risk of serious harm to his health or safety"), *report and recommendation adopted*, 2011 WL 398203 (M.D. Pa. Feb. 3, 2011); *Hill v. Smith*, No. 04-cv-1724, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (concluding that presence of mice and cockroaches in state prison's cells did not present health hazard sufficient to satisfy Eighth Amendment claim), *aff'd* 186 F. App'x 271 (3d Cir. 2006).

Concerning Beltran's allegations about the presence of black mold:

[I]n the specific context of inmate claims stemming from the alleged presence of black mold in the prison, it has been held that: "Without any allegation as to suffering actual physical harm from the mold, which is required to state his federal claim, [an inmate] Plaintiff's conditions of confinement claim regarding the black mold . . . lacks constitutional muster." *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019). Thus, absent specific allegations of physical harm, "the mere presence of mold does not indicate an objectively serious deprivation." *Johnson v. Beard*, No. 3:CV-09-886, 2014 WL 4793905, at *6 (M.D. Pa. Sept. 25, 2014) (citing *Peterkin v. Jeffes*, 661 F. Supp. 895, 915 (E.D. Pa. 1987)) (only mold which poses a real health hazard is actionable). Accordingly:

> It has been similarly held that the presence of black mold in a prison shower did not to rise to a constitutional violation where the inmate plaintiff has not presented any facts alleging a substantial risk of harm. *Nickles v. Taylor*, 2010 WL 1949447 *5 (D.N.J. May 14, 2010). A perceived risk of future medical issues about mold exposure is likewise insufficient. *See McIntyre v. Phillips*, 2007 WL 2986470 *2–3 (W.D. Mich. Sept. 10, 2007).

*Id.* at 6-7.

*Cummings v. Kramer*, No. 22-cv-1118, 2022 WL 4594494, at *6–7 (M.D. Pa. Sept. 7, 2022) (alterations in original), *report and recommendation adopted*, 2022 WL 4585535 (M.D. Pa. Sept. 29, 2022).

As with his allegations about the conditions of the kitchen at SCI Huntingdon, Beltran has failed to allege that he suffered any physical harm from his alleged exposure to black mold. He similarly failed to do so regarding his allegations of asbestos exposure. Moreover, there are no allegations that these conditions posed a substantial risk of harm to his health or safety, or that Defendants knew of these conditions and disregarded an excessive risk to Beltran's health and safety.

Regarding Beltran's fire safety allegations, they consist of Beltran's conclusory allegation that SCI Huntingdon's double-locked doors constitute a fire hazard. There is no reasonable inference which could be taken from this conclusory allegation to show that a substantial risk of serious harm existed to him because of the double-locked doors. Beltran does not allege that there no other fire safety measures in place to mitigate any potential harm from a fire. Furthermore, he again fails to plead that Defendants knew that the doors constituted a serious fire hazard risk and disregarded an excessive risk to Beltran's health and safety by keeping them in place.

Overall, viewing the totality of the conditions at SCI Huntingdon as Beltran alleges, the Court does not find he has plausibly pleaded that these conditions, alone or in combination, deprive him of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834; *see Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists."). Accordingly, the Court will dismiss the complaint on this basis as well.

### C. <u>Leave to Amend</u>

Having determined that Beltran's claims against Defendants are subject to dismissal, the question arises as to whether to grant him leave to file an amended complaint. Although district courts should generally give leave to amend, they may dismiss a complaint with prejudice where leave to

amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

In this case, the Court will dismiss Beltran's claims without prejudice to him filing an amended complaint because the Court does not find that further amendment would be futile at this time. The Court will provide instructions regarding the filing of an amended complaint in the accompanying Order.

## IV.    CONCLUSION

Based on the aforesaid, the Court will grant the First IFP Application, deny the Second IFP Application as moot, and dismiss the complaint without

- 20 -

prejudice to Beltran filing an amended complaint. An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 6, 2024**
24-cv-1141-01